ESTATE OF SIDNEY F. TYLER, DECEASED, FIDELITY-PHILADELPHIA TRUST COMPANY AND ROBERT L. MONTGOMERY, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 95672. Promulgated July 27, 1939.

*W. W. Montgomery, Jr., Esq.,* for the petitioner.
*Eugene G. Smith, Esq.,* for the respondent.

### OPINION.

STERNHAGEN: The Commissioner determined a deficiency of $121,936 in estate tax, by including in gross estate the value of the corpus of a trust.

Tyler died June 3, 1935. On April 22, 1885, he transferred personal property in trust, the trustee to hold, sell and invest, collect the income, and, after payment of taxes and expenses, to pay over the remaining income in equal shares to or for the benefit of Tyler's children for life, and upon the death of one of the children, to the deceased child's issue. Upon the death of the survivor of the children the trustee was to make distribution of the trust property among their issue in equal shares *per stirpes*, or, if either left no issue, in a specified manner not here material. It was further provided that:

\* \* \* Sidney F. Tyler may at any time or times before said period of distribution of said trust property shall arrive, by any deed or deeds or other instruments in writing either alter or absolutely revoke and annul all or any of the uses, trusts and estates, hereinbefore limited and declared, and by the same or any other deed or instrument limit and declare such other uses, trusts and estates, of or concerning all or any part of the said trust property hereinbefore transferred and conveyed and the investments representing the same as he shall think fit, anything hereinbefore to the contrary notwithstanding.

On February 25, 1888, Tyler executed an instrument whereby he:

\* \* \* releases and annuls the right of revocation so in the said Indenture of the twenty-second day of April A. D. 1885 was reserved and provided. [*Sic.*]

*Provided,* nevertheless, that nothing herein contained shall be deemed to affect or limit any other of the terms and conditions of said Indenture, or divest, affect or disturb any estate, right, title or interest of the said Sidney F. Tyler in the said estate, other than the said right of revocation.

In an estate tax return filed with the collector at Philadelphia, the gross estate did not include the value of the trust property.

In determining the deficiency the Commissioner included $277,708.41, and the petitioner does not assail the figure of valuation if, contrary to its contention, the property is held to be within the statutory gross estate.

The essence of petitioner's contention is that the instrument of 1888 ended the settlor's power to alter, and that therefore the Revenue Act of 1934, section 401,[1] does not touch the estate. If this is so, it must be by virtue of a necessary construction of the 1888 instrument, for it would be plainly at variance with the decedent's express language. An unsophisticated reading of the 1885 instrument shows a retention by the settlor of two separately conceived powers described disjunctively. He might either (1) alter or (2) absolutely revoke and annul; might also limit and declare such other uses, etc., of all or part of the trust property. In the 1888 document with equal care and precision he annulled but one of these, the right of revocation. Without more, this would leave unaffected the other retained rights, and any alteration or any declaration of new uses would be unassailable. But the settlor was not content that such retained rights should be left in any doubt; the *expressio unius* maxim was not enough. By the proviso he assured himself that the annulment of the right of revocation should not affect or limit any other terms or affect or disturb any right other than the right of revocation. Thus the settlor did about all that a forthright person could to show an intention to keep the right to alter and to forego the right to revoke. He used discriminating language, with a fine sense of draftsmanship, to express that intention.

The petitioner now urges, however, that such an understanding of the two instruments is indeed unsophisticated and that the juristic conception is otherwise. This is a refined argument (no less respected on that account) which must be supported not alone by logic, but by compelling authority. Petitioner's logic is that any alteration, especially to change benefits, would be *pro tanto* a revocation and hence inhibited by the 1888 instrument. This is so inconsistent with the unmistakable intention to retain the rights described in the proviso that it would stultify the instrument in one of its important objects. Clearly it was no more designed to annul the power of revocation than it was to leave unimpaired the described power of alteration. It might have been possible to read the renunciation of the power to revoke as preventing an alteration if there were ambiguity of language or if there

[1] SEC. 401. REVOCABLE TRUSTS.

Section 302 (d) of the Revenue Act of 1926 is amended to read as follows:

"(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * *."

had been an emergence of unforeseen circumstances. But there is no such ambiguity and no unforeseeable situation arose. Petitioner suggests that the settlor clearly had no right after the renunciation of 1888 to vary the quantities by assigning to one beneficiary a part of what had theretofore been assigned to another, because as to the latter this would be to some extent a revocation. But it would be more aptly described as a declaration of another use, trust, or estate "of any part of the said trust property hereinbefore transferred", and this was separately retained in the 1885 instrument, covered by the proviso of 1888, and hence not relinquished under the cancellation of the power of revocation.

The petitioner cites Restatement of the Law of Trusts, ch. 10, sec. 331 comment h. This, we think, gives petitioner no support. The black letter states that the power to modify exists if reserved, and the comment and the cases cited in the explanatory notes of tentative draft No. 5 (sec. 321) indicate that a reserved power to modify may be interpreted in the light of all the circumstances as subject to restriction, and that if not restricted it includes the power to revoke. This is far from saying that the relinquishment of a reserved power to revoke destroys a separately expressed power to alter, despite an express proviso containing the reservation of the latter. *Faulkner* v. *Irving Trust Co.*, 231 App. Div. 87; 246 N. Y. Supp. 313, indicates that the power to amend may dominate an express restriction on the power to revoke so thoroughly as to support a complete termination of the interest of a cobeneficiary. Even the doubt as to the *Faulkner* decision which Judge Hand expressed in *Porter* v. *Commissioner*, 60 Fed. (2d) 673, would not affect the present case, for it relates only to an alteration which defeats the original beneficiaries to the profit of the settlor. Apparently a modification to redistribute the original interests would be free from doubt even though the power of revocation were restricted.

The petitioner cites an unreported decision of the Orphans' Court of Philadelphia County in *Grossman's Estate* (May 25, 1938), confirming a trustee's account. The terms of that trust and the later documents are materially different, and the circumstances much more complex. It can not be regarded as analogous. *Chance's Estate*, 29 D. & C. (Penna.) 586, is more like our case (although still not close enough to be controlling), and there the reserved power to amend by will was held not to include the power to revoke by will when there was expressly reserved a power to revoke by deed. From this it may be inferred that the restriction on the power of revocation did not reach the reserved power of amendment. But perhaps as to both these Orphans' Court cases, Judge Van Dusen's language could be aptly quoted: "This case is not at all helpful because the language used in the instant case is not at all similar to that used in the case

cited." There is really nothing we can find and nothing cited by petitioner which demonstrates that Pennsylvania would say that the decedent at the time of his death had no power to alter the trust, even though we are not so sure that any or every alteration which he might have attempted would have been successful. Conceivably some attempts would have been held to impinge upon the relinquishment of the power to revoke. But if there were any alterations which conceivably the decedent might validly have made, the revenue act imposes a tax upon the property thus under his control. *Porter* v. *Commissioner*, 288 U. S. 436. It is not for us to say that a power to alter so deliberately reserved and later so carefully preserved in the proviso was after all without force and substance because it was inadvertently destroyed with the annulment of the right of revocation.

The revenue act includes in the gross estate the trust property which was subject at the time of decedent's death to a power to alter or a power to revoke the trust. Petitioner would say that although in terms the decedent retained a power to alter, in fact such power to alter was absorbed in the relinquishment of the power to revoke. Since the two were separate, we conclude for the foregoing reasons that petitioner retained the power to alter and that the corpus of the trust was squarely within the statutory language including it within the gross estate.

The determination is sustained.

*Decision will be entered under Rule 50.*